IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PRAGMATICPLAY INTERNATIONAL LTD., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 1:22-cv-1016 RDA/IDD <br> ) |
| 51PPGAME.COM and 32 additional Internet domain names | ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Default Judgment against thirty-three Defendant Domain Names (collectively "Defendants" or "Defendant Domain Names") pursuant to Federal Rule of Civil Procedure 55(b)(2). After Defendants failed to file an answer, plead, or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, the supporting memorandum, and relevant portions of the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED.**

**I. INTRODUCTION**

On September 15, 2022, Plaintiff filed an amended complaint ("Complaint"), which remains the operative complaint in this matter, for *in rem* relief against Defendants. Dkt. No. 3. Plaintiff brought a claim for violation of the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Am. Compl. ¶ 1. Specifically, Plaintiff filed the lawsuit

1

seeking transfer of the domain names, as well as attorneys' fees and costs. Dkt. No. 18.

## A. Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal or *in rem* jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this case involves a federal question arising under the ACPA (15 U.S.C. § 1121(a)).

This Court has *in rem* jurisdiction over Defendant Domain Names, pursuant to 15 U.S.C. § 1125(d)(2) because the domain name violates Plaintiff's trademark rights and the Plaintiff is unable to obtain personal jurisdiction or, through due diligence, find a person liable for the infringement. The Plaintiff must establish two elements for an *in rem* action over a domain name. First, the domain name must violate a plaintiff's trademark rights. *See* 15 U.S.C. § 1125(d)(2)(A)(i). As further discussed below, Plaintiff has common law trademark rights in the PPGAMES mark. Further, Plaintiff alleges that Plaintiff's mark is being violated by the unlawful registration and use of Defendant Domain Names that use the PPGAMES mark without Plaintiff's authorization. Am. Compl. ¶¶ 6-38, 59-71, 75. Therefore, the first element is satisfied.

Second, the court must find that the trademark owner: (1) is unable to obtain *in personam* jurisdiction over a person liable for the infringement, or (2) through due diligence is unable to find a person liable for the infringement. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Due diligence requires that the plaintiff: (a) send a notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and e-mail address provided by the registrant and (b) publish a notice of the action as the court may direct. *Id*.

Here, the undersigned finds that Plaintiff has sufficiently alleged that it is unable to obtain personal jurisdiction and could not find person(s) liable for the alleged infringement. Because the

registrant field in the WhoIs records for Defendant Domain Names is either blank or reflects a privacy service, a fictious person/entity, and/or an individual residing outside the United States, there is no evidence that any of the actions of the registrant(s) would constitute sufficient minimum contacts to support personal jurisdiction. Even though Defendant Domain Names are included on the VeriSign, Inc. ("Verisign") registry, which is situated in this judicial district, "this is not enough to establish minimum contacts." *GlobalSanteFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 615 (E.D. Va. 2003). Further, Plaintiff has complied with subsections (aa) and (bb). On September 8, 2022, Plaintiff sent notice of its intent to proceed *in rem*, including a copy of the Complaint, to physical and email addresses of the Defendant Domain Names. On September 15, 2022, Plaintiff amended its Complaint and added an additional domain name. On that same day Plaintiff sent notice to the additional domain name of its intent to proceed *in rem*. Plaintiff filed a motion for an order to publish notice of the action on September 26, 2022. Dkt. No. 6. The Court granted the motion on October 4, 2022, and ordered Plaintiff to publish a copy of the Order in *The Washington Times* once, within fourteen days of the Order. Dkt. No. 11. On October 10, 2022, Plaintiff published a copy of the Order in *The Washington Times*. Dkt. No. 12.

Venue also is proper in this District under 15 U.S.C. § 1125 (d)(2)(C)(i). For an *in rem* action, the domain name "shall be deemed to have its situs" in the judicial district where the "registrar, registry, or other domain name authority" is located. 15 U.S.C. § 1125(d)(2)(C). Here, Plaintiff asserts that the principal place of business of the domain name registry, Verisign, Inc., is located in this district. Compl. ¶ 42.

### B. Service of Process

The Court also must be satisfied that the defaulting party has been properly served. Pursuant to Federal Rule of Civil Procedure 4(n)(1), the court may assert service over property if

authorized by a federal statute and notice to claimants of the property is given as provided in the statute or by serving a summons under this rule. Fed. R. Civ. P. 4(n)(1). In this case, 15 U.S.C. § 1125(d)(2)(B) states that satisfying the due diligence requirements outlined in § 1125(d)(2)(A)(ii) shall constitute service of process Plaintiff has fulfilled the due diligence requirements outlined above. The undersigned recommends a finding that service of process has been proper.

### C. Grounds for Default Judgment

Plaintiff filed its complaint against Defendants on September 8, 2022, pursuant to the *in rem* provisions of the ACPA. Dkt. No. 1. On September 15, 2022, Plaintiff filed an amended complaint to add an additional domain name, aw-1-ppgames.net. Dkt. No. 3. On September 26, 2022, Plaintiff filed a Motion for Service by Publication. Dkt. No. 6. The Court granted the motion on October 4, 2022 and ordered Plaintiff to publish the Order of Service by Publication ("Order") in *The Washington Post* or *The Washington Times*, and to serve a copy of the Order on Defendants via electronic means. Dkt. No. 11. On October 10, 2022, Plaintiff published a copy of the Order in *The Washington Times* and via electronic means. Dkt. No. 12.

Plaintiff filed a Request for Clerk's Entry of Default on November 2, 2022, and the Clerk of the Court entered default on November 3, 2022. Dkt. Nos. 14, 16. On November 29, 2022, Plaintiff filed its Motion for Default Judgment and accompanying memorandum in support of its motion. Dkt. Nos. 18-19. Upon this matter's referral, a hearing was held before the undersigned on December 16, 2022. Dkt. No. 21. Because of Defendants' failure to appear at the hearing or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. *Id.*

### II. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment

when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55. A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id*.

Thus, in issuing this Report, the undersigned must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. FACTUAL FINDINGS AND ANALYSIS

#### Count One: Violation of the ACPA

To establish an ACPA violation, a plaintiff is required to show that (1) the plaintiff owns the protected mark, (2) the registrant(s) had a bad faith intent to profit from using the domain names, and (3) the domain names are identical or confusingly similar to, or dilutive of, the

5

distinctive marks owned by plaintiff. *See* 15 U.S.C. § 1125(d)(1)(A); *See Also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).

For the reasons set forth below, the undersigned finds that Plaintiff has established a violation of the ACPA.

### *1. Plaintiff Possesses a Valid and Protectable Mark.*

A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See Wagner v. lindawagner.com*, 202 F.Supp. 3d 574, 580-81 (E.D. Va. 2016). A party may assert a protectable interest in an unregistered trademark if the mark is (1) used in commerce, and (2) sufficiently distinctive. *Int'l Bancorp, LLC v. Societe des Bains de Mer du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003). The Fourth Circuit has held that commerce under such context is "coterminous with that commerce that Congress may regulate under the Commerce Clause of the United States Constitution." *Int'l Bancorp, LLC*, 329 F.3d 359 at 364. "[T]he term 'use in commerce' with respect to services[,]" is defined "as being when a mark is 'used or displayed in the sale or advertising of services *and* the services are rendered in commerce." *Id.* at 373 (emphasis added). The degree of protection is "directly related to the mark's distinctiveness." *East West, LLC. V. Rahman,* 896 F. Supp. 2d 488, 499 (E.D. Va. 2012) (quoting *Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455, 464 (4th Cir. 1996)). "At common law, trademark ownership is acquired by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). The party claiming ownership is required to demonstrate that it was the first to use the mark in the sale of goods or services. *Id*.

The undersigned finds that Plaintiff has a protectable interest in the PPGAMES mark. Plaintiff has used the PPGAMES mark to promote its online casino games via advertisements on

social media. Am. Compl. ¶¶ 50-51. These services are accessible and available within the United States and to U.S. citizens abroad. Am. Compl. ¶ 47. Plaintiff has actively and continuously developed, offered, and supplied its online and mobile casino games in connection with the PPGAMES mark. Am. Compl. ¶¶ 47-49. Moreover, administrative websites, hosted at backoffice.ppgames.net, also use the PPGAMES mark. Am. Compl. ¶ 50.

Plaintiff has also sufficiently demonstrated that the PPGAMES mark is distinctive because it has acquired a second meaning. There are two ways a plaintiff can demonstrate the distinctiveness of a mark: "1) that plaintiff's mark is inherently distinctive; or 2) even if the plaintiff's mark is not inherently distinctive, the mark has become distinctive by acquiring secondary meaning." *Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 575 (E.D. Va. 2000). A mark is inherently distinctive, if it is "fanciful," "arbitrary," and "suggestive," and is entitled to greatest protection against infringement; however, if the mark is only "descriptive" or "generic," it is not inherently distinctive and requires a secondary meaning to receive protection. *Id*. (citing *Sara Lee Corp.,* 81 F.3d at 464). The Fourth Circuit has held that a rebuttable presumption of the marks secondary meaning is created when a plaintiff proves that the defendant directly and intentionally copied its mark. *Larsen v. Terk Technologies,* 151 F.3d 140, 148-49 (4th Cir. 1998).

The undersigned finds that the PPGAMES mark is distinctive because it has acquired a secondary meaning. Defendant Domain Names were all registered months after Plaintiff had used and promoted the PPGAMES mark. Am. Compl. ¶ 57. All Defendants use some variation of the PPGAMES mark, which has no meaning outside of its use as a source identifier for Plaintiff's services. Am. Compl. ¶¶ 6-33; Exs. 1-33. Further, many of the domains incorporate terms that are intended to refer to PragmaticPlay, including "pragmatics," "pragmatic" or "prgmtc." *See id*.

Accordingly, the undersigned finds that Plaintiff has sufficiently shown that Defendant Domain Names have directly and intentionally copied its mark. Because the Defendants have failed to rebut this presumption, the undersigned finds the PPGAMES mark is distinctive because it has acquired a secondary meaning. For the above-stated reasons, the undersigned finds that Plaintiff has a valid and protectable mark to state a claim under the ACPA.[1]

### 2. Defendants Acted in Bad Faith with Intent to Profit from Using the Defendant Domain Names

To establish an ACPA violation, plaintiff also is required to prove that the registrant(s) had a bad faith intent to profit from using the defendant domain names. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether a defendant acted in bad faith, a court may consider several factors, including, but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

---

[1] One of the previously listed Defendant Domain Names, PPGAMES.COM, was created in 2005 (before Plaintiff's registration of PPGAMES.NET). (Dkt. No. 3-1, Exhibit 11). However, Plaintiff filed a motion for default judgment to all domain listed in the complaint, *except* for PPGAMES.COM, which was transferred to Plaintiff and voluntarily dismissed. (Dkt. No. 15). Since the domain name that first incorporated "PPGAMES" in its domain name has been transferred to Plaintiff, Plaintiff has priority over the mark. *See Emergency One,* 332 F.3d at 267

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69. Courts need not address all nine factors and only need to discuss the factors relevant to the "unique circumstances of th[e] case." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F.Supp.2d 563, 567 (E.D.Va.2010); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir.2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir.2000)).

    The undersigned finds that Plaintiff has established that registrant(s) possessed the requisite bad faith intent to profit from Defendant Domain Names. 15 U.S.C. § 1125(d)(1)(A)(i). Under the facts and circumstance of this case, the undersigned finds factors five and eight, intent to divert consumers and acquisition of identical or confusingly similar domain names, respectively, particularly relevant in determining whether Defendants acted in bad faith. At least thirteen of the

Defendant Domain Names have been used to offer and/or promote online gaming services that are identical and/or similar to Plaintiff's gaming services. Am. Compl. ¶¶ 6-38, Exs. 1-33. Moreover, as noted above, Defendants directly and intentionally included the entirety of the PPGAMES mark in approximately 19 of their domain names, which further supports a finding of bad faith under factor two. Factor seven, intentional failure to maintain accurate contact information, also suggests Defendants acted in bad faith. The registration data for Defendant Domain Names reveals that all but four domain names are registered to an unidentified person or entity. *Id.* The remaining four are registered to persons or entities claiming to reside in South Korea or China. *Id.* Defendants profited from the domain names by using pay-per-click advertisements, for which Defendants were compensated, when the advertisements directed Internet visitors to third-party websites for sales solicitation. Am. Compl. ¶¶ 62-64. In some instances, Defendants directed visitors to online gaming services using pirated or imitation PPGAMES online gaming software to defraud visitors believing they were using PPGAMES online gaming services. *Id.* Considering all the factors, Plaintiff has sufficiently alleged that Defendants had the "bad faith intent to profit" from Plaintiff's PPGAMES mark. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d at 268 (noting the bad faith analysis depends upon "unique circumstances" of each case).

### *3. Defendant Domain Names are Confusingly Similar to Plaintiff's PPGAMES Mark*

The undersigned finds that Plaintiff has sufficiently demonstrated that Defendant Domain Names are confusingly similar to Plaintiff's mark. 15 U.S.C. § 1125(d)(a)(A)(ii); *See Also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). "In assessing whether a mark is confusingly similar, the alleged infringing domain name does not

need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 936 (4th Cir. 1995)).

Here, each of the Defendant Domain Names are confusingly similar to Plaintiff's PPGAMES mark for the reasons that follow. In that regard, several Defendant Domain Names wholly incorporate the PPGAMES mark, including 9-PPGAMES.com, AG-PPGAMES.net, AG1-PPGAMES.net, FPPGAMES.com, HK0-PPGAMES.net, PPGAMESLOT.com, PPGAMESOFPRAGMATICS.com, PPGAMESPRAGMATICS.com, PPGAMESPRAGMATIK.com, PPGAMESPRGMTC.com, SG1-PPGAMES.net, SG2-PPGAMES.net, SW1-PPGAMES.net, TW1-PPGAMES.com, TW13-PPGAMES.net, TW14-PPGAMES.net, TW2-PPGAMES.net, TWPPGAMES.net, and TW-PPGAMES.net.

In addition, the remaining Defendant Domain Names that incorporate typographical errors have committed "typosquatting," which takes advantage of common typographical errors, such as when a letter is inserted or omitted, or the order of letters is altered or substituted. *See Fox News Network, LLC,* No. 1:20-cv-00149 at *5 (finding that the domain name xofnews.com was confusingly similar from Plaintiff's mark because the switch of the letters x and f was sufficient to constitute a common typographical error); *See also Central Source, LLC v. annualdcreditreport.com an Internet Domain Name, et al.,* No. 1:14-cv-304, 2014 WL 3811162 (E.D. Va. Aug. 1, 2014). The domain names that either inserted a letter (e.g., PPGGAMES.com or SPPGAMES.com) or substituted a letter that originally existed in the mark with a letter that did not originally exist in the alleged infringed mark in "PPGAMES" (e.g., PPGAMEZ) are sufficient to constitute a common typographical error found by the Court in *Fox News Network,*

*LLC,* and *Central Source, LLC*. Therefore, the undersigned finds that Plaintiff has demonstrated that Defendant Domain Names are confusingly similar to the PPGAMES mark.

**Relief**

In this *in rem* action, Plaintiff seeks an order directing VeriSign to change the registrars of record for Defendant Domain Names to Plaintiff's domain name registrar of choice, SafeNames Ltd., and directing SafeNames Ltd. to take all necessary steps to have Plaintiff listed as the registrant for Defendant Domain Names. (Dkt. No. 18-1). Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name … a court may order … the transfer of the domain name to the owner of the mark." This Court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, LLC.*, 129 F. Supp. 2d at 490. Given that Plaintiff has established a violation of the APCA, the undersigned recommends granting Plaintiff's requested relief.

**V. CONCLUSION**

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment as to Count One in favor of Plaintiff against Defendants for violation of the ACPA.

**VI. NOTICE**

**By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows**. **Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen**

**(14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

September 11, 2023  
Alexandria

          /s/ Ivan D. Davis  
Ivan D. Davis  
United States Magistrate Judge